■ JAY GROSSMAN et al., Appellants, v RICHARD BALL et al., Respondents. [600 NYS2d 770] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Keegan, J.), entered July 7, 1992 in Albany County, which, *inter alia*, granted defendants' motion for a preliminary injunction.

Plaintiff Jay Grossman and defendants Richard Ball, David J. Shulan and Scott L. Osur, all physicians, were employed by defendant Certified Allergy Consultants, P. C. (hereinafter CAC), a group medical practice, and also by plaintiff Albany Allergy and Asthma Services, P. C. (hereinafter AAAS), which performed clinical studies for pharmaceutical companies. Grossman owned 100% of the shares of AAAS and Ball owned 100% of the shares of CAC. In December 1989 the four physicians entered into a memorandum of understanding, under which Shulan and Osur were to be permitted to buy into both corporations, Shulan beginning in 1991 and Osur in 1992, until they each owned 25% of both AAAS and CAC. At the same time, each physician also entered into an agreement outlining the terms of his employment with AAAS and CAC.

In April 1991, after a falling out between the parties, Grossman tendered separate resignations from both corporations, effective on October 15, 1991. The resignations were accepted by Ball, as president of CAC, and by Grossman himself, as president of AAAS. The course of events that followed is sharply disputed; during the summer, Ball, Shulan and Osur appear to have voluntarily ceased working for AAAS and Grossman was no longer permitted to see patients at the CAC offices. After the effective date of his resignation, Grossman set up a new corporation, Advanced Allergy and Asthma Professional Corporation (hereinafter Advanced),

which occupied the former offices of AAAS, made use of AAAS' equipment and hired former employees of AAAS. Advanced completed the clinical studies which had been in progress at AAAS and also served as Grossman's office for the treatment of private patients.

At issue here is Grossman's right to receive termination pay as specified in his employment contract. The contracts of Grossman and Ball, the corporate founders, provide that each is to receive $450,000 in termination pay, to be paid in 60 monthly installments, should the employment relationship be terminated for any reason; of the total amount, $378,504 is to be paid by CAC, with AAAS responsible for the remaining $71,496. Grossman has represented that he is only concerned, at this juncture, with the amount allocated to be paid by CAC. Of this amount, CAC made two payments, in December 1991 and January 1992, but refused to tender the third payment, due February 15, 1992, on the ground that Grossman has remained a "de facto" employee of AAAS, albeit under the name Advanced, and thus has no right to termination pay. It is also asserted that Grossman "stole" the assets and business of AAAS and has wrongfully retained $35,000 paid to him, by Shulan, for AAAS stock that was never delivered.

Grossman brought this suit to compel payment; defendants answered and interposed counterclaims. The Grossman action in which AAAS is also a party plaintiff has been consolidated with one commenced by defendants, wherein various causes of action against plaintiffs in connection with the same sequence of events are advanced. By order to show cause defendants moved for a preliminary injunction, seeking to prevent Grossman from accelerating any amounts due him under the employment agreement and from seizing CAC's accounts receivable pursuant to a security agreement signed in connection with the employment contract. Plaintiffs cross-moved for an order accelerating the amounts due and ordering payment of the entire $450,000. Supreme Court granted defendants' motion and denied plaintiffs' cross motion, and plaintiffs appeal.

Because defendants have made no showing that they would be irreparably harmed in the absence of the requested relief, the preliminary injunction should not have been issued. Defendants rest their demand for an injunction on a conclusory allegation that they will "have the cash drained" from their practice. They argue that the business will be placed "in a tailspin" if Grossman is permitted to enforce his security interest in CAC's accounts receivable. Defendants have submitted no evidence, however, to document their concern that

such action on Grossman's part, if allowed, will result in dissolution of CAC, loss of reputation or other irreparable injury *(see, Town of Warrensburg v Mollica,* 171 AD2d 995; *Kaufman v International Bus. Machs. Corp.,* 97 AD2d 925, 926, *affd* 61 NY2d 930).

Moreover, in the record CAC is portrayed as an extremely lucrative enterprise. That this is apparently the case may account for the fact that defendants have not even attempted to demonstrate that compliance with the payment schedule of the contract will cause them any significant financial distress; if the payments are ultimately found to have been unwarranted, they will be adequately compensated by a monetary award. Furthermore, plaintiffs affirmatively represent that defendants will be given an opportunity to bring the payments up to date before any action is taken on the security agreement. And, as for Ball's speculation that Grossman may not "be able to repay any such amounts paid to him", there is simply no evidentiary foundation in the record for this concern *(see, Sutton, DeLeeuw, Clark & Darcy v Beck,* 155 AD2d 962, 963). To the contrary, Grossman avers that he has sufficient assets, including property owned jointly with Ball, from which to repay any amounts which are ultimately determined not to be rightfully his. Thus, defendants are in a position to avoid any adverse effect that seizure of the accounts receivable could have on their practice—other than a manageable pecuniary loss—by making the payments until the matter is resolved. On the record as it stands, then, there is no reason to grant the preliminary relief sought by defendants *(see, Lawrence H. Morse, Inc. v Anson,* 185 AD2d 505, 506).

Turning to plaintiffs' cross motion, which has the cast of a request for summary judgment, it is clear that many issues of fact remain with regard to the circumstances of Grossman's departure from AAAS and CAC, and the accompanying events; these questions must be answered before it can be determined whether CAC has, in fact, defaulted on a contractual obligation to make the termination payments. Plaintiffs' cross motion was accordingly properly denied.

Mikoll, J. P., Levine and Crew III, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion; motion denied; and, as so modified, affirmed.